IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PAM VARSAFSKY,

Plaintiff,

v.

DELUZIO AND COMPANY, LLC,

Defendant.

2:23-CV-01507-CCW

## **OPINION**

Plaintiff Pam Varsafsky claims that her former employer, Defendant Deluzio & Company, LLC, discriminated against her on the basis of her disability in violation of the Americans with Disabilities Act ("ADA") and the Americans with Disabilities Act Amendments Act ("ADAAA"), 42 U.S.C. §§ 12101, *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§ 951, *et seq.*[1] Deluzio has moved for summary judgment on both claims. ECF No. 32. For the following reasons, the Court will grant the Motion.

## I.    **Material Facts**

The following facts are drawn from the parties' consolidated factual statements and responses, which appear at ECF Nos. 37 and 39, Ex. 1, and are undisputed unless otherwise noted.

Defendant Deluzio & Company, LLC is a Certified Public Accounting firm located in Greensburg, Pennsylvania. ECF No. 37 ¶ 1. Deluzio has six equity partners: Jeffrey Anzovino, Lisa Altschaffl, Cole Beehner, Joseph Petrillo, Stacey Sanders, and Dan Wilkins. *Id.* ¶ 2. Plaintiff Pam Varsafsky began working for Deluzio in 2004 as a front desk receptionist, and in 2016, she

---

[1] The Court has federal question jurisdiction over the ADA claims under 28 U.S.C. § 1331 and supplemental jurisdiction over the PHRA claims under 28 U.S.C. § 1367.

was promoted to Firm Administrator.  *Id.* ¶¶ 8, 9.  Also in 2016, Ms. Varsafsky was diagnosed with bi-polar disorder, but she did not tell Deluzio at that time.  *Id.* ¶¶ 20–21.  In February 2022, Deluzio hired Audrey Teears as an Operations Manager, although the parties dispute the reasons why she was hired.  *Id.* ¶¶ 11, 12;  ECF No. 39, Ex. 1 ¶ 86.  Ms. Varsafsky alleges that Ms. Teears was hired to replace her—an allegation that Deluzio denies.  ECF No. 37 ¶¶ 11, 12.

On March 22, 2022, Ms. Varsafsky's ex-husband called the police to have her involuntarily committed to a mental health institution due to concerns that Ms. Varsafsky would harm herself.  *Id.* ¶¶ 17, 18.  That day, police officers arrived at Deluzio's office to escort Ms. Varsafsky from the premises to a mental health institution.  *Id.*  But when the police arrived at the firm, Ms. Varsafsky attempted to avoid being subjected to the involuntary mental health commitment.  *Id.* ¶¶ 16, 18.  Despite her attempts to evade the police, she was involuntarily committed on that day. *Id.*  Based on these events, the Deluzio partners were aware of Ms. Varsafsky's involuntary commitment to a mental health institution in March 2022.  *Id.* ¶ 17.  Ms. Varsafsky further contends that she told one Deluzio partner, Stacey Sanders or Lisa Altschaffl, of her bipolar disorder shortly after her 2022 hospitalization;  however, Deluzio denies that it was ever made aware of her diagnosis.  *Id.* ¶¶ 22–24.  After she returned to work following her five-day hospitalization, Ms. Varsafsky asserts that the Deluzio partners stopped talking to her and treated her with disdain.  *Id.* ¶ 27;  ECF No. 32, Ex. C at 40:2–41:8.  But she acknowledges that the Deluzio partners continued speaking to her about work related issues.  ECF No. 37 ¶ 28.

On June 19, 2023, Ms. Varsafsky was terminated.  ECF No. 37 ¶ 64.  On that day, Ms. Altschaffl and Ms. Sanders came to Ms. Varsafsky's office and told her she was being let go;  and when asked why, Ms. Sanders stated "It's time."  ECF No. 39, Ex. 1 ¶ 95.  There is no

documentation regarding the partners' decision to terminate Ms. Varsafsky or explaining the reasons why. *Id.* ¶ 99.

## II.    Legal Standard

To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "A factual dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A factual dispute is 'material' if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *NAACP v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (alteration omitted) (quoting *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The burden to establish that there is no genuine dispute as to any material fact "remains with the moving party regardless of which party would have the burden of persuasion at trial." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996) (internal quotation marks omitted).  Furthermore, "[i]f the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'" *Kaucher v. Cnty. Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (quoting *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998)).

Once the moving party has carried its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts…. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving

party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586–87.  Thus, while "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor," *Anderson*, 477 U.S. at 255, "Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings" and point to "'specific facts showing that there is a genuine issue for trial,'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citation omitted).  But while the court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor . . . to prevail on a motion for summary judgment, the non-moving party must present more than a mere scintilla of evidence…." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (internal citations omitted).  Instead, "there must be evidence on which the jury could reasonably find for the non-movant." *Id.* (cleaned up).

## III. Discussion

Ms. Varsafsky asserts that Deluzio discriminated against her based on her disability when it terminated her employment in June 2023 after she was involuntarily committed to a hospital for mental health reasons on March 22, 2022.[2]  ECF No. 34.  Deluzio responds that Ms. Varsafsky cannot make out a prima facie case of disability discrimination because they were unaware of her disability and because she has not pointed to any facts establishing an inference of discrimination. ECF No. 33.  After a review of the parties' briefing, their statements of facts, and the relevant case law, the Court concludes that summary judgment in favor of Deluzio is warranted.

---

[2] In its Motion for Summary Judgment, Deluzio construed Ms. Varsafsky's claims as including a failure-to-accommodate claim.  ECF No. 33 at 23–24.  But in her Brief in Opposition, Ms. Varsafsky confirmed that she was not bringing a failure-to-accommodate claim.  ECF No. 34 at 9.  Accordingly, the Court need not analyze such claim.

A.      **Legal Framework**

The familiar *McDonnell Douglas* burden-shifting framework applies to Ms. Varsafsky's

discrimination claims under the ADA and the PHRA.[3]  *McDonnell Douglas Corp. v. Green,* 411

U.S. 792, 802–03 (1973);  *Burton*, 707 F.3d at 425–27; *Thimons v. PNC Bank, N.A.*, 254 F. App'x

896, 897–89 (3d Cir. 2007) (applying the *McDonnell Douglas* framework to ADA and PHRA

claims).

The *McDonnell Douglas* analysis has three steps.  First, the plaintiff must point to evidence

sufficient to satisfy the elements of a prima facie case of employment discrimination, thereby

creating an inference that her employer acted unlawfully.  *See Burton*, 707 F.3d at 426.  Next, the

defendant must rebut this inference by articulating a legitimate, non-discriminatory reason for its

actions.  *See id.*  The burden of production then shifts back to the plaintiff, who, in order to survive

summary judgment, must provide evidence from which a jury could reasonably infer that the

defendant's proffered explanation for its conduct is, in reality, pretext for unlawful discrimination.

*See id.* at 426–27;  *see also Fuentes v. Perskie*, 32 F.3d 759, 763–64 (3d Cir. 1994) (setting forth

burden shifting framework under *McDonnell Douglas* at summary judgment).  Although the

*McDonnell Douglas* framework contemplates a shifting burden of *production*, the burden of

*persuasion* always remains with the plaintiff.  *Smith v. City of Allentown*, 589 F.3d 684, 691 (3d

Cir. 2009).

B.      **Ms. Varsafsky Cannot Establish a Prima Facie Case of Employment Discrimination under the ADA.**

To establish a prima facie case of employment discrimination under the ADA, a plaintiff

must first point to evidence supporting the following elements:  (1) she is a person with a disability

---

[3] Because the provisions of the PHRA and ADA are analogous, the Court will analyze Ms. Varsafsky's ADA and
PHRA claims together.  *Thimons*, 254 F. App'x at 897–99 (analyzing plaintiff's ADA and PHRA claims together).

within the meaning of the ADA;[4] (2) she is otherwise qualified to perform the essential functions

of her job, with or without reasonable accommodations by the employer; and (3) she has suffered

an otherwise adverse employment decision as a result of discrimination. *Otero v. Port Authority*

*of N.Y. & N.J.*, No. 19-12634, 2024 WL 3200024, at *6 (D.N.J. June 26, 2024) (citing *Gaul v.*

*Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)). Further, for any ADA claim, a plaintiff

must show that she is "disabled and that the employer [is] aware of the disability." *Jones v. United*

*Parcel Serv.*, 214 F.3d 402, 406 (3d Cir. 2000).

Here, Deluzio challenges the third element of Ms. Varsafsky's prima facie case—namely,

that she suffered an adverse employment action *because of* discrimination based on her disability.

ECF No. 33 at 8. It asserts that Ms. Varsafsky cannot establish a prima facie case as a matter of

law because she failed to disclose her disability to Deluzio, to point to a similarly situated

comparator, and to state facts creating an inference of discrimination. *Id.* at 7–13. Ms. Varsafsky

responds that there is a genuine dispute of material fact because Deluzio was aware that she was

hospitalized for mental health reasons in March 2022 and because they have no documentation

regarding her termination and gave contradictory reasons for terminating her employment in June

2023. ECF No. 34 at 5–7.

The third element of a prima facie case "requires a causal nexus between the disability and

the adverse employment action." *Jenkins v. Sw. Pa. Human Servs., Inc.*, No. 2:20-501, 2021 WL

5989112, at *10 (W.D. Pa. Dec. 17, 2021) (Dodge, M.J.) (cleaned up). A plaintiff must show that

"they were treated differently based on the protected characteristic, namely the existence of their

---

[4] Under the ADA, a plaintiff is considered to have a disability if she (1) has a "physical or mental impairment that substantially limits one or more" of her "major life activities;" (2) has a record of such impairment; or (3) is "regarded as having such an impairment." *Morgan v. Allison Crane & Rigging, LLC*, 114 F.4th 214, 221 (3d Cir. 2024). Here, for purposes of its Motion, Deluzio does not dispute that Ms. Varsafsky has a disability within the meaning of the ADA. ECF No. 33 at 8. Further, as noted below, the Court will assume, without deciding, that Deluzio was aware of Ms. Varsafsky's disability; therefore, it need not decide whether Deluzio "regarded her" as having a disability.

disability." *CG v. Penn. Dept. of Educ.*, 734 F.3d 229, 236 (3d Cir. 2013). "[M]ere awareness of a disability does not create an inference of discrimination." *Tielle v. The Nutrition Group*, No. 3:17-2417, 2019 WL 3801552, at *7 (M.D. Pa. Aug. 13, 2019). "A plaintiff may raise an inference of discrimination in two ways, by '(1) introduc[ing] evidence of comparators (i.e., similarly situated employees who (a) were not members of the same protected class and (b) were treated more favorably under similar circumstances);  or (2) rely[ing] on circumstantial evidence that otherwise shows a causal nexus between [her] membership in a protected class and the adverse employment action.'" *Otero*, 2024 WL 3200024, at *6 (citing *Greene v. Virgen Islands Water & Power Auth.*, 557 F. App'x 189, 195 (3d Cir. 2014)). Here, for purposes of its summary judgment decision only, the Court will assume, without deciding, that Deluzio was aware of Ms. Varsafsky's disability. Even so, Ms. Varsafsky has failed to establish a prima facie case because she cannot show an inference of discrimination arising from her termination fifteen months after her hospitalization.

### 1. Ms. Varsafsky Has Not Pointed to a Similarly Situated Comparator.

First, Ms. Varsafsky has not pointed to any similarly situated comparator. *See generally* ECF No. 34. Although she alleges that Ms. Teears was hired to replace her, *id.* at 1, she has not shown that Ms. Teears was similarly situated to her. To determine whether a fellow employee is a similarly situated comparator, courts look at several factors, including whether "'the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct.'" *Opsatnik v. Norfolk S. Corp.*, 335 F. App'x 220, 223 (3d Cir. 2009). "A determination of whether employees are similarly situated takes into account factors such as the employees' job responsibilities, the supervisors and decision-makers, and the nature of the misconduct engaged in." *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011).

Here, Ms. Varsafsky has not pointed to evidence sufficient to show that she was similarly situated to Ms. Teears. She has not shown that Ms. Teears' job performance, disciplinary record, or attendance were similar to hers. Further, Deluzio hired Ms. Teears as an Operations Manager, and Ms. Varsafsky has not shown that this position was similar to her role as Firm Administrator. And Ms. Varsafsky's passing and conclusory references to Ms. Teears replacing her are insufficient to establish that she is a similarly situated comparator. *Otero*, 2024 WL 3200024, at *6 (finding that plaintiff did not establish proffered comparators were similarly situated because she only made "passing conjectural reference[s]" to them and did not show that they had similar roles, attendance records, or job performances to hers). Accordingly, Ms. Varsafsky has not pointed to a similarly situated comparator who could give rise to an inference of discrimination.

### 2.    The Timing of Ms. Varsafsky's Termination is Not Unduly Suggestive.

Further, the timing of Ms. Varsafsky's termination—15 months after her 2022 hospitalization—is not unusually suggestive. "Unusually suggestive temporal proximity between the protected activity and the adverse action can be sufficient 'to create an inference of causality and defeat summary judgment.'" *Harrison-Harper v. Nike Inc.*, 788 F. App'x 846, 849 (3d Cir. 2019) (citing *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007)). But there is "no bright line rule" for what length of time is unusually suggestive. *Id.* (explaining that courts have found three months is not enough, but two days is). Here, the Court finds that the fifteen-month lapse between Ms. Varsafsky's mental health commitment on March 22, 2022, and her firing on June 19, 2023, is not unusually suggestive. ECF No. 37 ¶¶ 16, 64; *Jenkins*, 2021 WL 5989112, at *10 ("[T]here is no evidence in the record from which a reasonable jury could find temporal proximity as months, not days, are at issue."). Therefore, Ms. Varsafsky cannot show an inference of discrimination based on temporal proximity alone.

**3.    Ms. Varsafsky Cannot Point to Facts Giving Rise to an Inference of Discrimination.**

Without a similarly situated comparator or unduly suggestive temporal proximity, to survive summary judgment, Ms. Varsafsky must point to other record evidence creating an inference that she was terminated because of her disability. *Otero*, 2024 WL 3200024, at *6. She has not done so. To support an inference of discrimination, Ms. Varsafsky points to Deluzio's allegedly contradictory reasons for terminating her, its lack of documentation regarding her job performance and termination, and its partners' purportedly disdainful treatment of her after her 2022 hospitalization. ECF No. 34 at 1, 6–7. These circumstances, however, do not show that Ms. Varsafsky's bi-polar disorder "played a role in [Deluzio]'s decision[-]making process and that it had a determinative effect on the outcome of that process." *Coleman v. Children's Hospital of Phila.*, No. 22-1445, 2023 WL 7412923, at *6 (E.D. Pa. Nov. 8, 2023) (citing *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293, 300 n.4 (3d Cir. 2007)).

First, Ms. Varsafsky conclusorily asserts that the Deluzio partners offered contradictory testimony regarding the reasons why her employment was terminated, but she does not explain why that testimony is contradictory. ECF No. 34 at 6. Indeed, the cited testimony does not support Ms. Varsafsky's assertion, as all five partners[5] testified that she was terminated for poor job performance. ECF No. 32, Ex. A at 19:5-21:17 ("[Ms. Varsafsky] made mistakes."); Ex. E at 13:19-25 ("[W]e felt that [Ms. Varsafsky] could no longer adequately perform her duties."); Ex. F at 22:17-23:10 ("[H]er performance was not up to the standard that we needed."), 27:23-30:1 ("[S]he was making errors… she was performing so poorly"); Ex. H at 14:3-14:18 (explaining that Ms. Varsafsky was fired because of "performance issues"); Ex. I at 8:6-22 (citing

---

[5] There is no deposition testimony from Dan Wilkins in the record.

"performance issues" as a reason for Ms. Varsafsky's termination).  And while the partners gave different examples of Ms. Varsafsky's poor job performance, the Court finds that no reasonable juror could conclude that their reasons were contradictory as they all supported Deluzio's assertion that Ms. Varsafsky was terminated for poor job performance.  ECF No. 32, Ex. A at 9:5–22, 20:17–25 (citing problems with cellphone use, attendance, payroll, and bookkeeping);  Ex. F at 7:8–19, 22:17–23:21 (identifying problems with bookkeeping, paying bills, and cashing checks);  Ex. H at 13:4–22 (citing problems with attendance, availability, and producing an accurate work product); Ex. I at 8:13–22 (indicating problems with attendance, work product, and cellphone use).

Ms. Varsafsky further claims that the reasons given for her termination were contradictory because the partners cannot identify when they decided to terminate her, they have no written documentation of the reasons for her termination, and they increased her salary in June of 2022. ECF No. 34 at 6.  Such circumstances, however, do not give rise to facts from which a reasonable juror could conclude that Deluzio had contradictory reasons for terminating Ms. Varsafsky's employment.  The lack of a written record, the inability to remember the exact date the decision to terminate Ms. Varsafsky was made, and the pay increase nearly a year before her termination do not indicate that the partners' identified reasons for terminating Ms. Varsafsky were contradictory. Therefore, Ms. Varsafsky's conclusory assertion that the Deluzio partners gave contradictory testimony about the reasons for her termination is belied by the record and does not raise an inference of discrimination.

Next, the absence of a written record regarding Ms. Varsafsky's job performance and termination does not establish a causal nexus between her mental health commitment and her firing 15 months later.  While the lack of a written record could allow a reasonable juror to infer that Deluzio terminated Ms. Varsafsky for any number of reasons, Ms. Varsafsky has not pointed to

anything in the record—as she must—from which a reasonable juror could infer that her bi-polar disorder was one of those reasons. *Rubano v. Farrell Area School Dist.*, 991 F. Supp. 2d 678, 700 (W.D. Pa. 2014) (Lenihan, M.J.) ("A cause of action under the . . . ADA requires proof, inter alia, that the claimed discrimination occurred as a result of the [plaintiff]'s disability.") (citing *Purcell v. Pa. Dep't of Corrections*, Civ. A. No. 11–181J, 2006 WL 891449, at *13 (W.D. Pa. Mar. 31, 2006)). The mere absence of a written record regarding her poor job performance and termination does not automatically create an inference that Ms. Varsafsky was terminated because of her bi-polar disorder.

And although Ms. Varsafsky does assert that the Deluzio partners stopped talking to her and treated her with disdain after her March 2022 mental health commitment, this assertion is insufficient to connect her bi-polar disorder to her June 2023 termination. First, Ms. Varsafsky asserts that the partners stopped talking to her after her hospitalization, but she does acknowledge that they continued to talk with her about work-related issues, indicating that, at most, they only stopped talking to her about personal issues. ECF No. 37 ¶¶ 27, 28. Such an assertion does not establish an inference of disability discrimination. Further, although she conclusorily asserts the partners also treated her with disdain, Ms. Varsafsky does not explain which partners, how so, and whether it was a few comments or a pattern of disdainful treatment. *See Greene v. V.I. Water & Power Auth.*, No. 06–11, 2013 WL 2279350, at *3 (D.V.I. May 22, 2013) (explaining that a "collection of stray remarks and unconnected, coincidental circumstances" do not create an inference of discrimination). Moreover, even if Ms. Varsafsky establishes that she had a poor relationship with the Deluzio partners, such conflict does not automatically indicate disability discrimination. *Rubano*, 991 F. Supp. 2d at 701 ("A personality conflict doesn't ripen into an ADA claim simply because one of the parties has a disability.") (citing *Walton v. Mental Health*

*Ass'n. of Se. Pa.*, 168 F.3d 661, 667 (3d Cir. 1999)).  And Ms. Varsafsky has not shown that her poor relationship with the Deluzio partners was more than a mere personality conflict:  she does not allege that anyone at Deluzio spoke negatively about her bi-polar disorder or mental health commitment at any point in the 15 months prior to her termination.  *See Coleman*, 2023 WL 7412923, at *6 (finding that plaintiff did not state a prima facie case of discrimination where she alleged a change in tone during interactions with her supervisor because she did not allege that anyone at the firm "spoke negatively about her medical conditions or mentioned them at any point in her suspension or termination process.").  Therefore, these circumstances—that the partners stopped talking to Ms. Varsafsky about personal issues and treated her with disdain—without more, do not establish an inference of disability discrimination.

Overall, Ms. Varsafsky has failed to point to evidence in the record from which a reasonable jury could infer she was terminated because of her disability.  She does not identify a similarly situated comparator, the timing between her mental health commitment and firing was not unduly suggestive, and she cannot point to evidence in the record supporting an inference that Deluzio terminated her based on her bi-polar disorder.  The only evidence she does identify— Deluzio's lack of a written record and a change in the Deluzio partners' behavior toward her— does not create an inference that she was terminated because of her bi-polar disorder.  *See Silla v. Holdings Acquisitions Co., L.P.*, No. 2:20-00963, 2024 WL 957868, at *9–10 (W.D. Pa. Mar. 6, 2024) (Hornak, J.) (finding plaintiff failed to establish prima facie case of disability-based discrimination where there were "no facts in the record that support an inference that Defendant discharged [Plaintiff], either in whole or in part, based on her alleged disabilities.").  And without facts in the record supporting an inference of discrimination, Ms. Varsafsky cannot make out a prima facie case of discrimination.  *See Coleman*, 2023 WL 7412923, at *6 (finding that plaintiff

pointed to no evidence directly linking her asserted disabilities with her termination where there was a 7-week gap between her medical leave and termination, an alleged "change in tone" during interactions with her supervisor, and her employer conducted only a "half-hearted" and "rushed" investigation into the reasons for terminating her).

**IV.    Conclusion**

For the foregoing reasons, Defendant's Motion for Summary Judgment, ECF No. 32, will be GRANTED, as more fully set forth in the attached Order.

DATED this 25th day of October, 2024.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record